MONROE, J.
Defendant, charged with cutting and wounding with a dangerous weapon, with “the felonious intent .* * * to kill and murder,” moved to quash the indictment, on the ground that “it does not allege the kind and character, name and description of the dangerous weapon with which the alleged assault was committed,” and, the motion having been denied, he reserved" a bill.
The indictment was framed under Rev. St. § 791, as amended by Act No. 43 of 1890, which reads (in part):
“Whoever shall cut * * * any person with a dangerous weapon, with intent to commit murder * * * shall, on conviction, suffer imprisonment, at hard labor, or otherwise, for not less than one, nor more than twenty-one years.”
The charge is in the language of the statute, and, we think, is sufficient. In State v. Scott, 39 La. Ann. 943, 3 South. 83, the accused was charged, under Rev. St. § 794, with the infliction of a wound, less than mayhem, by cutting, with a certain dangerous weapon, commonly called a “pocketknife,” and it was objected thát the indictment was defective because a pocketknife is not a dangerous weapon. It was, however, held that, though a-pocketknife be not, eo nomine, a dangerous weapon, within the meaning of Rev. St. § 932 (making it an offense to carry dangerous weapons concealed about the person), it may, by its use, be considered so, under Rev. St. § 794, which provides a penalty for the infliction, with a dangerous weapon, of a wound less than mayhem. And the same reasoning was used in the State v. Sinegal, 51 La. Ann. 932, 25 South. 957, where under Rev. St. § 791, the accused was charged with cutting with a dangerous weapon,' to wit, a razor, with intent to commit murder. In the case first cited, Bermudez, O. J., as the organ of the court said:
“It may well be that the accused could not, under section 932, Rev. St., have been convicted for carrying a dangerous weapon, concealed on or about his person, because a pocketknife is not, eo nomine, a dangerous weapon ; but, it does not follow that, when under sec *496 tion 794, Rev. St., the charge is that the accused did, with such a knife, feloniously inflict a severe wound, less than mayhem, such weapon may not be considered by the court and jury as a dangerous weapon, by the use made of it, within the meaning of that section, particularly as the description of the weapon is not, necessarily, required by the Statute, which merely mentions a dangerous weapon; i. e., any dangerous weapon, which may be so, by its use or in itself.”
In
In State v. Brown, 41 La. Ann. 345, 6 South. 541 (as in the case above cited), the accused was charged with inflicting a wound less than mayhem with a dangerous weapon, to wit, a knife, and, notwithstanding that a knife may not be, eo nomine, or, for the purposes of Rev. St. § 932, a dangerous weapon, the court held that “the grievance of £he offense” (denounced by Rev. St. § 794) “is the- inflicting a wound less than mayhem, the stabbing, cutting and thrusting and (that) it may be well left to the jury to determine the dangerous character of the weapon with which the wound is inflicted.” See, also, State v. Washington, 104 La. 445, 29 South. 55, 81 Am. St. Rep. 141. If, then, where the indictment specifies a particular thing, such as a knife, razor, stick, bolt, etc., not ordinarily so considered, as a dangerous weapon, with which a person has been cut, struck, thrust, or wounded, and it is left to the jury to determine, from the use said to have been made of such -thing, whether it should be regarded as dangerous, it seems evident that this case is not one in which it was necessary to amplify the language of the statute, in framing the indictment; for, Whether the weapon, as used in the commission of the offense charged, is dangerous is a question for the jury.
We are therefore of opinion that the motion to quash was.properly overruled. •
It appears from a motion in arrest of judgment that the accused, though charged with an offense for which the punishment may be, but is not necessarily, at hard labor, was | tried by a jury of 12. The Constitution, however (article 116), provides that cases in which the punishment may be at hard labor shall be “tried by a jury of five, all of whom must concur to render a verdict. Cases in which the punishment is, necessarily, at hard labor, by a jury of twelve, nine of whom concurring may render a verdict.” The tribunal before which the accused was tried was therefore without jurisdiction in the premises, and, as to him and his case, was as though it did not exist. It is true that article 117 of the Constitution provides that:
“The district judges shall have authority to try * * * when the jury is waived, all 'cases not, necessarily, punishable at hard labor”
—and hence, that had the defendant before the court waived the jury, he might have been tried by the judge; but the fact that provision is thus made for his trial, in the event of his waiving the jury, upon which jurisdiction is primarily conferred, merely strengthens the impression that it was not the intention that he should be tried by any other than either the tribunal mentioned in the first instance, or that thus specially provided as a substitute. In other words, if it be said that defendant, by failing to object to his trial by the jury of 12, waived his right to be tried by a jury of 5, the answer is that the Constitution provides that he shall be tried by a jury of 5, unless he waives that right, and in the event of such waiver the district judge shall have authority to try him, but it no more confers that authority upon a jury of 12 than upon a jury of 3 or a mob of 50, and all over 5, who participated in his trial and conviction, were outsiders, whose presence in the jury room, even if they had not so participated, would have vitiated the verdict. State v. Craighead, 114 La. 84, 38 South. 28.
In State v. Thompson, 104 La. 167, 28 South. 882, it was held that:
*498 “Parties accused of crime, necessarily punishable at hard labor, have no legal right to waive trial by jury and insist upon being tried by the district judge; the reason assigned by the district court for refusing to permit the accused to waive the jury” (and approved by this court) “being that the state has an interest in the preservation of the lives and liberties of its citizens, and will not allow them to be taken away without due process of law.”
In State v. Ned, 105 La. 696. 30 South. 126, 54 L. R. A. 933, it appeared that the crime with which the accused was charged, being necessarily punishable at hard labor, 1 of the 12 jurors by whom he was tried became intoxicated and remained so during the trial, which, though not objected to before verdict, was made the basis of a motion for new trial. In setting the verdict aside, this court .said;
The Constitution “required that * * * the accused should be tried by twelve men. He could not waive this requirement.”
In State v. Jackson, alias Shamp, 106 La. 189, 30 South. 309, the decisions above cited were affirmed, and they are as applicable In principal to the case at bar as to those in which they were rendered; for the state is as much interested that a person who maybe subjected to punishment at hard labor shall not be deprived of his liberty without due process of law as that one who must be subjected to. such punishment shall not be so dealt with, and certainly one cannot be said to have had the benefit of due process of law if tried before a tribunal upon which the law has conferred no jurisdiction to try him, but has, discriminatingly, conferred such jurisdiction elsewhere. The objection that the court is not a legal court, or that it has no jurisdiction of the offense, cannot be waived, and may, therefore, be taken at any time. Cyc. vol. 12, p. 228.
It is therefore ordered, adjudged, and decreed that the conviction and sentence appealed from be set aside.