HAMITER, Justice
 

 (dissenting).
 

 •' The- indictment herein charges that the four defendants, on or about July 7, 1948,
 
 "
 
 * * * having a specific intent to commit a crime, did lie in wait with dangerous weapons and instrumentalities, to-wit: mowing machine blades, in the night time, on Highway No. 171 between Mansfield and Benson, in DeSoto Parish, Louisiana, for the purpose of and tending directly toward the intentional damaging of a passenger auto-bus occupied by several persons and owned and being operated by Southern Bus Lines, Inc., wherein it was foreseeable that human life might be endangered.” Amplifying that charge the district attorney, through his answer to a motion for a bill of particulars, states (among other things) that, “ * * * The mowing machine blades referred to in the bill of indictment
 
 were to be used
 
 by placing the same in the paved highway standing them on a base to hold the blades up so as to cut the tires on the bus causing them to go flat and the bus to go out of control.” (Italics ours.) In a per curiam, attached to one of the bills of exceptions reserved by defendants, the district judge comments on the evidence adduced at the trial as follows:
 

 “ * * * the mowing machine blades which
 
 were in the process of being placed upon the highway and used
 
 by these accused were specially prepared instruments in which the points had been pre-sharpened. These blades
 
 were in the possession of
 
 -one of the defendants, and it was confessed by all of the defendants that these
 
 were to be used
 
 by placing them in' three separate sticks with guides on them, and they have welded to the base a *T’ which causes them to stand upright on the highway. The
 
 *69
 
 three sticks with guides hold twelve blades each and are three feet long, which would cover one entire side of the eighteen-foot paved highway. They were in the process of being placed on the highway by the four defendants, three of whom were present on the ground immediately before the bus was scheduled to arrive on the highway; two of whom were to use flash lights for signals and the other in a car operated for. the purpose of advising of the appearance of the bus.” (Italics mine.)
 

 And the majority opinion herein observes :
 

 “ * * * Defendants
 
 intended to place
 
 these blades in the highway so as to cut the tires of the bus, causing them to go flat, and causing the bus to go out of control.” (Italics mine.)
 

 From the foregoing (the indictment as amplified, the trial judge’s comment on the evidence, and the majority opinion), it is apparent that the defendants never assembled the mowing machine blades on sticks or placed them on the highway, in order to cut the tires of the bus, although they possessed the blades, at the time and place álleged by the state,
 
 to be used
 
 in such manner and for the particular purpose set forth. This being true it is my opinion that defendants’ motion for a new trial, if not their motions to quash and in arrest of judgment, should have been sustained. In the motion for a new trial the allegation was made, “That no evidence was adduced in Court or presented to the jury that defendants
 
 Used
 
 any weapon, and particularly mowing machine blades, in any manner calculated or likely to produce death or great bodily harm.”
 

 In the brief filed on behalf of the state it is said:
 

 “The bill of indictment in this case seeks to charge the defendants with Attempt To Commit Aggravated Criminal Damage To Property under the provisions of Articles 27 and 55 of the Louisiana Criminal Code, Act No. 43 of 1942. * * * ”
 

 Article 55 of the. Criminal Code defines the substantive offense of aggravated criminal damage to property as:
 

 “ * * * the intentional damaging of any structure, water-craft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.”
 

 Article 27 of that Code, insofar as pertinent, states:
 

 “Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
 

 “Mere preparation to commit a crime shall not be sufficient to constitute; an attempt; but lying in wait with a.danger
 
 *71
 
 ous weapon with the intent to commit a crime, or searching for the intended victim With a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute- an attempt to commit the offense intended.”
 

 As to the interpretation to be given the provisions of our Criminal Code we observed in the comparatively recent case of State v. Truby et al., 211 La. 178, 29 So.2d 758, 759, as follows:
 

 “It is so well settled that citation of authority is unnecessary that in Louisiana there are no common-law crimes, and that nothing is a crime which is not made so by statute.
 

 *
 
 * '
 
 * * * *
 

 “It is true, as stated hereinabove, that in the construction of a provision of the Criminal Code the words used therein are to be taken according to their fair import, in their usual sense, in connection with the context, and with reference to the purposes of the provision. However, it is equally true that a penal statute must be strictly construed and cannot be extended to cases not included within the clear import of its language, and that nothing is a crime which is not clearly and unmistakably made a crime. Articles 3 and 7, Louisiana Criminal Code; State v. Bref-feihl, 130 La. 904, 58 So. 763, 40 L.R.A., N.S., 535, and authorities therein cited; State V. Comeaux, 131 La. 930, 60 So. 620.”
 

 ' In the later case of State v. Vallery et al., 212 La. 1095, 34 So.2d 329, 331, this court made reference to a Tulane Law Review treatise prepared by one of the draftsmen of the Criminal Code wherein he criticized the Truby decision, and, in answer to the suggestion that the rule of strict interpretation should not be applied to the provisions of the Code, we said:
 

 “With all due respect to the opinions entertained 'by the learned trial judge and the author of this treatise, we think the error in their ratiocination lies in the fact that under our basic law no one can be held accountable, or subjected to criminal prosecution, for any act done by him unless and until that act has been denounced as a crime and has -been made punishable in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct is such that it falls within the purview of the act intended to be prohibited.”
 

 With this rule of strict construction in mind let us consider the mentioned Article 27, along with the indictment and facts of this case, under the provisions of which the defendants were sought to be charged with an attempt and were convicted for it.
 

 The first' paragraph of the article, it i-s noticed, prescribes two elements essential to constitute an attempt to commit an offense. One of these is the existence of a specific intent to commit the crime, and the other is the performing of an overt act, either of omission or commission, tending
 
 directly
 
 toward the accomplishing
 
 *73
 
 of the accused person’s object. These defendants, according to the record before us, did possess the specific intent to commit the crime defined and denounced by Article 55. However, the second essential element — defendants’ performing of an overt act tending directly toward the execution of that intent — was neither charged in the indictment nor disclosed by the trial judge’s per curiam relating to the merits. The assembling by defendants of the small individual mowing machine blades on the sticks and placing them on the highway, even though the bus never arrived at the place in question, would have been such an overt act; but, as before shown, that did not take place.
 

 The state seemingly concedes that defendants committed no overt act in connection with the specific intent which they entertained. It relies, however, on that provision of the second paragraph of Article
 
 27
 
 reading, “
 
 *
 
 * * but lying in wait with a dangerous weapon with the intent to commit a crime * * * shall be sufficient to constitute an attempt to commit the offense intended”; and it contends and argues that the mowing machine blades, which admittedly are not inherently dangerous, fall within the definition found in Article 2 of the Criminal Code that “ ‘dangerous weapon’ includes any gas, liquid or other substance or instrumentality, which,
 
 in the manner
 
 used, is calculated or •likely to produce death or great bodily harm.” (Italics mine.)
 

 By this definition, obviously, the Legislature intended to classify as dangerous weapons all of those substances and instru-mentalities not ordinarily or inherently dangerous that are rendered dangerous by the manner in which they are actually used; they, in other words, become dangerous weapons if and when, and only when, they are actually used as such. Thus, if the mowing machine blades involved in this cause, which ordinarily and inherently are not dangerous, had been assembled and placed on the highway (actually used) in a manner calculated and likely to produce great bodily harm to the passengers of the bus (even though the bus never reached or neared the scene) they, in that event, would have become and would be classified as dangerous weapons. But until so used they could not be termed, under the quoted definition of Article 2 of the Criminal Code, dangerous weapons.
 

 That the blades were never used as dangerous weapons is made clear by the record. As stated in the district attorney’s answer to the motion for a 'bill of particulars, “The mowing machine blades referred to in the bills of indictment were
 
 to be used
 
 by placing the same in the paved highway standing them on a base
 
 to hold
 
 the blades up * * Further, as pointed out above, the per curiam of the trial judge (referring to the merits) recites : “These blades were
 
 in the possession
 
 of one of the defendants, and it was confessed by all of the defendants that
 
 *75
 
 these
 
 were to be used
 
 by placing them in three separate sticks with guides on them * * (Italics mine.)
 

 Since the 'blades, therefore, were never used in a manner rendering them dangerous weapons, these defendants did not violate the portion of Article 27 of the Criminal Code, relied on herein by the state, which provides that lying in wait with a dangerous weapon with the intent to commit a crime shall be sufficient to constitute an attempt to commit the offense intended. Rather, their actions (standing on the highway with the unassembled blades in the possession of one of them, although with the specific intent to use those blades in causing damage to the bus) are covered, in my opinion, by the first sentence of paragraph 2 of said Article 27 which reads: “Mere preparation to commit a crime shall not be sufficient to constitute an attempt”.
 

 It cannot be gainsaid that the specific intent or plan entertained in concert by these defendants was atrocious and most reprehensible. Perhaps, in view of that intent and the preparation made to carry it out, they could and should have been charged, tried and convicted for the offense of criminal conspiracy. But a specific intention to commit a crime, no matter how heinous it may be, is insufficient •for a conviction of an attempt under Article 27 of the Criminal Code unless there is "present also the other essential discussed '•above and provided for in such article. ;Tó' obtain the result sought herein by the state and that which has been reached by the trial court and by a majority of the members of this court, it is necessary to change materially the definition of dangerous weapon found in Article 2 of the Criminal Code. Instead of applying the definition as written: “Dangerous weapon includes any * * * instrumentality, which,
 
 in the manner used,
 
 is calculated or likely to produce death or great bodily harm”, it must be changed to read: “Dangerous weapon includes any * * * instrumentality, which, in the manner
 
 intended to be used,
 
 is calculated or likely to produce death or great bodily harm.” That this change has been effected in reaching the majority decision is clearly shown by the following extract from the supporting opinion : “We conclude, therefore, that for the purpose of the lying in wait provision of the attempt article an instrumentality, etc., may be a dangerous weapon if the one lying in wait
 
 intends to use it
 
 in a manner calculated or likely to produce death or great bodily harm.” The adding of the words “intended to be” to the definition certainly is not in keeping with the doctrine of strict construction announced in the Truby and Vallery cases, supra, in the latter of which we specifically said: “Courts can do no more than interpret and construe statutes'. They cannot, under the guise of intrepretation, assume legislative functions.” (Italics mine.)
 

 It seems appropriate to point out here that the discussed definition is important
 
 *77
 
 with respect to numerous crimes, denounced in the Criminal Code, in which the possession of a dangerous weapon is an element; it is not confined in its application to the instant alleged offense. And if the interpretation placed on it by the majority is adhered to much confusion is likely to result in the future. Thus, “Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation,
 
 while aivned vuith a dangerous weapon."
 
 Article 64. Now let us suppose that a person commits a theft from another by use of force, he at the time having in his pocket an unopened pen knife placed there with the specific intention of using it on his victim but which was never withdrawn. In such a case has that person committed armed robbery or only simple robbery, theft by force or intimidation, but not armed with a dangerous weapon — Article 65? Under a literal or strict construction of the definition of a dangerous weapon the offense would be simple robbery, for the pen knife (which is not inherently dangerous) was nevep used. 'But under the interpretation announced by the majority opinion it would be armed robbery, because the person
 
 intended to use
 
 the knife in a manner calculated or likely to produce death or great bodily harm. The same illustration is pertinent also to the crimes of simple and aggravated battery, simple and aggravated assault* burglary in the night time or day time; and simple burglary. , ,
 

 Interesting, and with which I have no quarrel, are the several cases cited in the majority opinion in support of the holding that the defendants’ motion to quash and demurrer were correctly overruled, namely: State v. Scott, 39 La.Ann. 943, 3 So. 83; State v. Brown, 41 La.Ann. 345, 6 So. 541 ; State v. Stewart et al., 117 La. 476, 41 So. 798; State v. Beebe et ah, 127 La. 493, 53 So. 730. As correctly pointed out they announce the doctrine that the indictment need not name or describe the dangerous weapon alleged on, the employing of the words “with a dangerous weapon” being sufficient, and that the question of whether the instrumentality used was in fact a dangerous weapon is for the jury’s determination. But those cases are not at all applicable here. Therein the indictments specifically alleged cutting, wounding, etc., showing clearly that the offending instrumentalities had actually been used in producing bodily harm. The instant indictment as amplified names and describes the alleged dangerous instruments as mowing machine blades, which are not dangerous per se, and then discloses that those blades were never used in a manner calculated or likely to produce bodily harm.
 

 I respectfully dissent.