337 So.2d 461 (1976)
STATE of Louisiana
v.
Roy HOLLINGSWORTH.
No. 57690.
Supreme Court of Louisiana.
September 13, 1976.
*463 Bernard A. Horton, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In an indictment returned by the grand jury of Orleans Parish, Roy Hollingsworth was charged with the murder of Clifton Solar. La.R.S. 14:30. In a trial before a twelve-man jury a verdict was returned on May 16, 1973 finding Hollingsworth guilty without capital punishment, or benefit of parole, probation, commutation or suspension. He was sentenced to imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.
On this appeal eleven assignments of error are relied upon by Hollingsworth to reverse his conviction and sentence.

Assignments 1, 2 and 3
When the State sought to have the victim's wife identify him from a photograph of his corpse, defense counsel offered to stipulate that the photograph did depict the body of Clifton Solar, who was killed around 2:30 on the morning of October 15, 1972. Without objection from the State, the stipulation was entered into the record. Thereafter the State offered to introduce the photograph into evidence. Defense counsel then objected that the photograph was redundant and punitive and served no other purpose than to inflame the emotions of the jury. The objection was overruled, and a bill of exceptions was reserved, which, with other bills reserved thereafter, is treated under these assignments of error, this being number one.
Later, a former assistant coroner, a medical doctor, testified that an autopsy was performed on the victim by the coroner's office. He was asked by the State's attorney to show the jury the location of the gun wounds on the victim by referring to, among others, the photograph of the corpse previously referred to. Defense counsel offered to stipulate that the victim died and the photograph correctly depicted what was shown thereon. The State refused to enter into the stipulation, and the doctor proceeded to explain the location and nature of the wounds on the photograph and the cause of death. Although this reference to the photograph is called assignment number two by the defense, the record does not disclose that a contemporaneous objection was made to any ruling by the trial judge, (for that matter, no ruling of the trial judge on this situation appears) nor did defense counsel object to the refusal of the State's attorney to join in his proposed stipulation. However, when the State later offered the photograph into evidence, defense counsel did object, and, when the objection was overruled, he reserved a bill of exception to the ruling. This is referred to as assignment 3.
Defense counsel argues that his offers to stipulate would serve to establish the identity of the victim, the fact of death and the time of death. The photograph, he contends, had no other value. It was, therefore, unnecessary to the prosecution's case and served only to inflame the jury to the prejudice of the defendant.
As the brief recital of fact demonstrates, the photograph, however, did serve to assist the doctor in explaining the nature and location of the wounds and to demonstrate and explain the cause of death.
According to the State, the defense cannot prevent the introduction of photographs of substantial probative value by the simple expedient of offering to stipulate to all matters which could be shown by the picture, unless the defense also admits and stipulates that the accused produced these wounds and injuries on that person. As authority for this position 3 Scott, Photographic Evidence § 1225 (2d ed. 1969) is cited.
In this State courts rely upon the rule that the trial judge is to exercise his discretion in allowing the admission of photographic evidence. Unless there is an abuse of discretion in the ruling of the trial judge, that ruling should stand. State v. Gibson, 271 So.2d 868 (La.1973).
*464 The test of admissibility of photographs of a dead body is whether their probative value outweighs their probable prejudice. Generally, photographs are admissible which illustrate any fact or which shed light on an issue, or are relevant to describe the person, place or thing involved. State v. Johnson, 198 La. 195, 3 So.2d 556 (1941).
In a criminal prosecution the State must sustain the heavy burden of proving every element of the crime charged. In the instant case it was necessary, because the evidence was available, to establish the identity of the victim, his death and the cause of death. The probative value of these photographs in proving the crime and its seriousness far outweigh the emotional impact on the jury. State v. McCauley, 272 So.2d 335 (La.1973).
Although it is the defendant's position that the photograph would inflame the jury, it is not more gruesome than any photograph of the upper extremity of a dead body. The body was not mutilated and the wounds were small. There was no error in the ruling of the trial judge admitting the photograph. State v. Curry, 292 So.2d 212 (La.1974); State v. Gibson, 271 So.2d 868 (La.1973); State v. Hall, 256 La. 336, 236 So.2d 489 (1970) and State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966).

Assignment 4
Defendant objected to the trial judge's ruling which permitted the State, on redirect examination, to question a witness, the second victim of this offense, concerning the length of time he spent in the hospital. It is his contention that although the subject was brought out by the State on direct examination, the subject was not referred to by the defense on cross-examination. Therefore, it was improper for the State to bring that subject up again on redirect examination.
On cross-examination defense counsel did make an issue of the fact that the witness, who was a second victim, was not called by the police to appear at a lineup. On redirect the prosecuting attorney sought to show that the reason the witness was not called to attend a lineup was because he was recuperating in the hospital for three months.
The rule of law controlling this issue is found in Section 281 of Title 15 of the Revised Statutes:
"The redirect examination must be confined to the subject matter of the crossexamination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."
Questioning of the witness by the State on redirect examination was for the announced purpose of eliciting an explanation for testimony brought out by the defense on cross-examination. As such, the redirect examination was proper. State v. Wright, 301 So.2d 616 (La.1974).

Assignments 5 and 8
Detective Peterson was called as a witness by the State and was asked if, in connection with the homicide of Clifton Solar, he had occasion to effect the arrest in the case. He answered that he arrested Hollingsworth on October 17, 1972. In answer to the question, "Was anyone with you at the time of his arrest?" he answered that his partner Detective McCracken and the complainant Mr. Lenheimer were with him. At this time defense counsel moved for a mistrial. He objected to the denial, and the ruling is the subject of assignment 5.
As we understand the contention, the reference to Lenheimer brought to the jury's attention the fact that defendant had been involved in offenses of burglary and assault. These offenses, according to the defense, were unrelated to the offense for which defendant was being tried. For this reason, evidence of these unrelated offenses was not admissible to show knowledge or intent under Sections 445 or 446 of Title 15 of the Revised Statutes, or for any other purpose.
*465 The mere fact that the jury heard that Mr. Lenheimer was the complainant who caused Hollingsworth's arrest does not support the defense contention. The jury was not told, and the record does not show, that Lenheimer was connected with an unrelated burglary and assault as the defense contends.
Assignment 8 is based upon a statement of Lieutenant O'Donnell who was testifying as a state witness. He was asked to describe a conversation with Hollingsworth after his arrest and while he was in custody at the detective bureau. While Hollingsworth was describing the details of the crime, he told O'Donnell that about two weeks before Clifton Solar was killed he, Hollingsworth, stole a pistol from a couple he met at "Eddie Price's". This statement is said to be inadmissible evidence of another offense unrealted to the offense for which Hollingsworth was being tried. The contention has no merit. The theft of the murder weapon two weeks before the shooting of Solar was certainly relevant to the charge against Hollingsworth as it tended to show that he was in possession of a gun at the time of the killing.
This Court has repeatedly held that highly probative evidence is not to be excluded simply because its introduction also relates to another offense. La.R.S. 15:445 and 446; State v. O'Conner, 320 So.2d 188 (La.1975); State v. Hatch, 305 So.2d 497 (La.1975) and State v. Wright, 301 So.2d 616 (La.1974).

Assignment 6
During the trial the jury was retired and the State proceeded to lay the predicate for the introduction of oral confessions. The defense charges that the oral confessions were inadmissible because the defendant refused to sign the rights of arrestee form containing the Miranda warnings, and the confessions were the product of persistent efforts by police officers to persuade defendant to incriminate himself. The charge is not supported by the record.
Detective Peterson testified that Hollingsworth was arrested about 2:37 o'clock on the afternoon of October 17, 1972, two days after Solar's murder. Hollingsworth was told that he was being arrested "as a perpetrator of a murder". He was taken to the detective bureau by Peterson and Detective McCracken. During the trip to headquarters Hollingsworth was not questioned, nor was he abused in any way. Upon arrival he was advised of his Miranda rights, but remained silent and refused to sign the rights of arrestee form.
Hollingsworth was transferred to the homicide division about three o'clock that afternoon. There Lieutenant O'Donnell again advised him of his rights, and Hollingsworth signed the rights of arrestee form in his presence. O'Donnell testified that no one abused or struck the accused; nor did anyone promise him any reward for cooperating with the police. O'Donnell told Hollingsworth that he was suspected of robbing and murdering Clifton Solar and that he was identified as the killer from his picture by Harold Merritt, one of the victims of the robbery in which Solar was killed.
When Hollingsworth denied any involvement in the matter, the officers suggested that he take a polygraph test, but he refused. About an hour later, when asked by O'Donnell how he spent his time the night of the crime, he stated he was at "Eddie Price's" with Edward Bell, but had left the place about ten o'clock, leaving Bell there.
Bell, having been taken into custody with Hollingsworth, was immediately interviewed in a nearby room. When he was told what Hollingsworth had said, he exclaimed, "He's not going to put that God damned murder on me, he's the one that did it. I wasn't there." Hollingsworth was then booked with Solar's murder. O'Donnell explained that the delay in booking was because the officers wanted more substantiation of Hollingsworth's implication in the crime.
When Hollingsworth was told of Bell's statement he admitted to O'Donnell that he, Martin Shelby and Edward Bell had *466 robbed "Eddie Price's". While Bell stayed outside as a lookout, he and Shelby went inside and Shelby shot Solar and Merritt. He was then confronted by Shelby, and then confessed "O.K., I was the triggerman. He didn't do it; I did it."
Sergeant Knight was present when Hollingsworth gave the inculpatory statements. He testified that no one mistreated the accused in any way or promised him anything. The next day he accompanied Hollingsworth to the coroner's office where Dr. Rabin gave him a physical examination. The doctor testified that Hollingsworth told him that the police had not mistreated him, and the physical examination failed to reveal any evidence of recent injury. Hollingsworth, he said, did not appear to have been intoxicated or drugged as he had alleged.
Hollingsworth took the stand on the predicate for introduction of the statements and testified that after his arrest he was not advised of his Miranda rights, he refused to sign the form, and said he wanted to see his attorney and call his mother. He said O'Donnell gave him "a coke and some red pills", which were said to be pain pills. Thereafter he remembered nothing until he realized he was in Baton Rouge in some kind of jail. He testified he was beaten and terrorized by every officer on duty that night, and told Dr. Rabin he had not been mistreated because he feared more mistreatment. O'Donnell repudiated these claims in rebuttal. The trial judge found the confessions to be free and voluntary and they were admitted into evidence.
Before a confession or inculpatory statement can be introduced into evidence in a criminal trial, the State must affirmatively show that the confession or statement was voluntarily given and was not obtained through fear, duress, intimidation, meances, threats, inducements, or promises. La.Const. art. I, § 16 (1974); La.R.S. 15:451-452.
Further, since the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the State must establish that prior to being questioned the accused was told by the police officers that he had the right to remain silent, that anything he might say would be used against him in court, that he had a right to consult with an attorney and to have an attorney during interrogation, and that if he could not afford an attorney one would be appointed to represent him free of charge.
Admissibility of a confession is a question for the trial judge, its weight is for the jury. Conclusions of the trial judge on the credibility and weight of the testimony relating to the voluntariness of a confession is a question peculiarly within his province, and his findings will not be overturned on appeal unless they are not supported by the evidence. State v. Stewart, 325 So.2d 819 (La.1976); State v. Sims, 310 So.2d 587 (La. 1975); State v. Vessel, 260 La. 301, 256 So.2d 96 (1971); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971).
The record fully supports the trial judge's ruling that Hollingsworth freely and voluntarily confessed to killing Clifton Solar.

Assignments 7 and 9
Assignment 7 is based upon rulings of the trial judge admitting Exhibit 32, the Coroner's report, over defendant's objection that the testimony of the coroner was the best evidence and not the report.
Assignment 9 is based upon a similar ruling which admitted a ballistic report, over defendant's objection, after the State ballistic expert had testified concerning its content. It was contended that the testimony, not the report, was the best evidence.
The best evidence rule requires that "[t]he best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced." La.R.S. 15:436.
In our view the best evidence rule is not violated here. To the contrary, it is observed by the production of the written reports. Written reports are favored for their reliability as the best evidence. They are less likely to contain errors than a witness' testimony, especially when the time *467 lapse between the recorded facts and the testimony is appreciable. Without the testimony of the doctor and the ballistic expert, these documents may not have been admissible. Admissibility of a writing usually depends upon the establishment of a connection between the writing and the particular individual who executed it. Cf. State v. Christian, 160 La. 525, 107 So. 393 (1926). These reports were also admissible in corroboration of the testimony of the witnesses. These assignments have no merit.

Assignment 10
Ruby Lee Davis was called as a character witness on behalf of the defendant. She testified that she and Hollingsworth lived in the same neighborhood and that she knew him and that his reputation for truth and veracity and as a law abiding citizen was good. She gave no other direct testimony.
On cross-examination she was asked who she talked to about his reputation and replied, "his friends". When questioned further she could not name anyone, but said "They never talked about him telling the truth, but they don't say he lies." The cross-examiner then asked, "But, they don't discuss him telling the truth either?" The defense then objected.
The contention is that the State improperly implied to the jury that some affirmative community discourse concerning a defendant's good reputation was necessary, when, as a matter of fact, a lack of discussion of bad character is sufficient evidence of good character.
Notwithstanding the merit or demerits of the contention, a witness testifying to the good character of the accused may properly be cross-examined regarding particular facts to test the soundness of his opinion and the data upon which it is based. La.R.S. 15:479; State v. Ivy, 307 So.2d 587 (La.1975); State v. Harris, 247 So.2d 847 (La.1971); State v. Powell, 213 La. 811, 35 So.2d 741 (1948).

Assignment 11
Hollingsworth was sentenced to imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence in accordance with Act 502 of 1972 (La.Code Crim.P. art. 817). Defense counsel correctly contends that denying Hollingsworth the benefit of commutation of sentence was erroneous. The Legislature is without power to provide for a qualified verdict which infringes upon the constitutional authority of the Governor to commute sentences. La.Const. art. IV § 5(E) (1974); State v. Triplett, 313 So.2d 227 (La.1975); State v. Ramsey, 292 So.2d 708 (La.1974); State v. Varice, 292 So.2d 703 (La.1974).
Accordingly, for the reasons assigned, the conviction is affirmed, but the case is remanded to the trial court for the purpose of correcting the sentence by deleting therefrom the provision denying defendant the benefit of commutation of sentence. Otherwise the sentence is to remain in full force and effect. La.Code Crim.Pro. art. 882.
DENNIS, J., concurs, disagreeing with the treatment of assignments 1, 2 and 3 and will assign additional concurring reasons.
DENNIS, Justice (concurring).
Although I concur in the result reached by the majority, I find the disposition of Assignments of Error Nos. 1, 2 and 3 unsatisfactory in light of State v. Gilmore, 332 So.2d 789 (La.1976), recently handed down by this Court.
In Gilmore, we held that where the defense stipulates to all the facts which a photograph is offered to prove, it is within the trial court's discretion to exclude the photograph from evidence if it determines that the particular admission by the defendant is so plenary as to render the State's evidence wholly needless under the circumstances. Although it does not appear from the record that the trial judge was guided by the precepts established in Gilmore when he ruled this photograph admissible, I cannot say that this was reversible error since the trial was conducted long before the *468 decision in Gilmore was rendered. I cannot condemn the trial court's failure to follow guidelines of which it was not aware, but neither can I understand the majority's failure to discuss the Gilmore issues which this case clearly raises.
The majority adverts to the State's argument that "the defense cannot prevent the introduction of photographs of substantial probative value by the simple expedient of offering to stipulate to all matters which could be shown by the picture, unless the defense also admits and stipulates that the accused produced these wounds and injuries on that person." It should be noted that this is merely argument and does not represent the view of this Court. State v. Gilmore, supra. It would be a paradoxical rule which required a defendant presumed innocent to admit guilt in order to avoid unnecessary prejudice. I cannot, nor does this Court, subscribe to such a rule.