524 So.2d 1376 (1988)
STATE of Louisiana
v.
Ed KING.
No. KA 87 1323.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*1377 Freeman Ramsey, Asst. Dist. Atty., Amite, for plaintiff-appellee.
James Dukes, Robert Troyer, Asst. Public Defender, Amite, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Defendant was indicted by the Tangipahoa Parish Grand Jury and charged with five counts in a single indictment. The counts charged were aggravated rape, sexual battery and aggravated oral sexual battery of his seven-year-old daughter, violations of La.R.S. 14:42, 43.1 and 43.4, respectively. Additionally, the counts charged sexual battery and aggravated oral sexual battery of his one and one-half-year-old daughter, violations of La.R.S. 14:43.1 and 43.4, respectively. Defendant was tried by a jury which convicted him as charged on all five counts. Subsequently, the trial court sentenced defendant to life, without benefit of parole, probation or suspension of sentence for the aggravated rape. For each of the sexual batteries defendant received ten years. A sentence of twenty years was imposed for each of the aggravated oral sexual batteries. The court ordered that all five sentences run consecutive to each other.
Defendant has appealed, urging seven assignments of error, consisting of two unnumbered assignments and five numbered assignments. Defendant briefed five of his assignments of error and expressly abandoned assignment of error one and the second of his unnumbered assignments.

FACTS
The record reflects that defendant was thirty years old at the time of his March 10-12, 1987, trial. Kimberly King, defendant's wife and the victims' stepmother, testified that she, defendant and the children lived together in Tangipahoa Parish for about three or four months. They lived there in what she described as a "wreck", an "old house" that was a single story brick building. She testified that they had moved from Illinois to Louisiana and that, at the time the police came and removed the children from their home, they were living in the "run down building" in Hammond, Louisiana.
On September 8, 1986, Tangipahoa Parish deputy sheriff Kermit Stewart met with Monica Edwards, a state child protection investigator, and another individual. They informed Stewart that they had a "pick up order" for defendant's two children. In response, he picked up the children at their home on Ward Line Road in Hammond. On September 16, 1986, Tangipahoa Parish deputy sheriff Cullen Kennedy executed a warrant for defendant's arrest at defendant's Ward Line Road residence.
In response to a September 8, 1986, referral that had been received regarding the sexual abuse of defendant's seven-year-old child, Monica Edwards went to the child's school that same day and interviewed her. During the interview, the child told Edwards that defendant "licked on her thing," makes her "lick his," and "sticks it inside the little hole in front" and "inside her *1378 butt." During the initial interview, the seven-year-old victim told Edwards that defendant had been doing the foregoing things to her for a "long, long time" and that the last time it happened was the weekend preceding the initial interview.
Later, on September 12, 1986, Monica Edwards conducted a second interview with the seven-year-old victim at the Division of Children, Youth and Family Services of the Department of Health and Human Resources in Amite, Louisiana. This interview was videotaped pursuant to La.R.S. 15:440.1 et seq., which provides for electronic recording of statements by child abuse victims fourteen years of age or under and for the admissibility of such a recording as an exception to the hearsay rule. At trial, the videotape was introduced into evidence and viewed by the jury. During the videotaped interview, the victim made additional disclosures that defendant had also committed similar acts to her younger sister.
Dr. Nicholas Cefalu, Jr., qualified and was accepted by the trial court as an expert in the field of medicine with a speciality in family practice. He testified that he examined the seven-year-old victim on September 9, 1986. He determined that the child had some cervical irritation. When asked if he could determine how long the irritation had existed, he opined that it had existed for four to seven days. Based upon his findings of vaginal, cervical irritation and some laxity of the hymenal ring, Dr. Cefalu concluded that his examination had revealed a case of probable sexual abuse.
At trial, the seven-year-old victim gave testimony in which she repeated her descriptions of the acts of sexual abuse that defendant had committed against her and her sister.

ALLEGED FAILURE TO ESTABLISH VENUE
In defendant's first unnumbered assignment of error, he contends that the state failed to establish venue. We disagree.
La.C.Cr.P. art. 611 provides that all trials shall take place in the parish where the offense has been committed unless a change of venue is obtained. In order for the conviction to stand, venue must be proven during the course of the trial. La. C.Cr.P. art. 615; State v. Adams, 394 So.2d 1204 (La.1981); State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985). However, because venue is a special question, the scope of appellate review on that question is limited to determining whether there was some evidence, no matter how little, submitted to the jury to establish venue. State v. Adams, 394 So.2d at 1210. To sustain this proof, a trial court may take judicial notice of the fact that geographical locations mentioned by witnesses are within a particular parish, even if the parish is never specifically mentioned in the testimony. See La.R.S. 15:422; State v. Hookfin, 476 So.2d at 493.
The seven-year-old victim testified on direct examination that the offenses were committed while "we were living in that junky house." On cross-examination, the child testified that she did not remember living in a two story house. Thereafter, the child was asked two successive questions. The questions and her answer were as follows:
Q. When some of these things happened to you, weren't you living in the upstairs? It wasn't in that brick house was it?
A. No, sir.
Based upon the child's reply to the foregoing questions, defendant argues that the offenses could not have happened in Louisiana because the family only lived in the brick house while in Louisiana.
However, Tangipahoa Parish deputy sheriff Kermit Stewart testified that, after meeting with Monica Edwards on September 8, 1986, he picked up the victims at their single story brick home on Ward Line Road. Tangipahoa Parish deputy sheriff Cullen Kennedy testified that he arrested defendant on September 16, 1986, at his 1870 Ward Line Road residence, in Hammond, Louisiana. Monica Edwards testified that she went to the residence accompanied *1379 by law enforcement personnel. She described it as a one story brick home located in Tangipahoa Parish that appeared from the outside as "almost abandoned" and from the inside as unkept. Edwards further testified that the seven-year-old victim told her that the offenses (committed against both victims) occurred at that home. Kimberly Sue King testified that she, defendant and the victims lived together in an abandoned one story brick building in Tangipahoa Parish for about three or four months and that they were residing in the "run down" building in Hammond when the police came and took the children away. In addition, the child testified that the acts occurred frequently when Kimberly King got into a brown car with a lady and left the premises. Kimberly King testified that when she worked in Hammond at a restaurant, she rode with a girlfriend who drove a brown car. Based upon the foregoing, it is clear that venue in Tangipahoa Parish was established at trial.
ASSIGNMENTS OF ERROR NOS. TWO AND FIVE:
By means of these assignments, defendant contends that the trial court erred by allowing into evidence the hearsay testimony of Monica Edwards and Carolyn Ratcliff Dupont as to statements that the seven-year-old victim made to each of them. He argues that the alleged improperly admitted testimony of Edwards and Dupont does not fall within the early complaint of a victim of sexual assault exception to the hearsay rule. He asserts that none of the hearsay can be attributed to the child until days after the cessation of the alleged events and that there was no evidence to establish a shocking episode or a time frame between the alleged events and the victim's statements.
Assignment of error two relates to the testimony of Monica Edwards recounting the victim's statements (during Edwards' September 8, 1986, interview) that defendant had sexually abused her. Assignment of error five pertains to Dupont's testimony repeating statements made to her by the victim, while she served as the child's foster parent. Dupont testified that the victim drew her some pictures and stated that one of the pictures depicted her father climbing on top of her trying to penetrate her. Dupont also essentially testified that the victim frequently complained that her "front" or her "butt" hurt her and that it felt like it did when her father was penetrating her.
The testimony of Edwards and Dupont repeating what the victim told them constitutes hearsay because the testimony of each is an out of court unsworn statement of a third person offered for the truth of its content. State v. Elzie, 351 So.2d 1174 (La.1977). However, in prosecutions of sex offenses, the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of the shocking episode and not a fabrication. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Ohrberg, 448 So.2d 1316 (La.App. 1st Cir.1984).
The evidence adduced at trial established that Edwards' initial interview with the victim was conducted alone with the child at her school on September 8, 1986, the same day that the case was referred to the child protection agency and the victim was removed from the family home. Edwards testified that she did not have to ask the child many questions. The child was "very talkative, very open." She "just opened up and began talking." Edwards testified that the child told her, during the interview, that the last time defendant had sexually abused her was on the weekend prior to the interview and that the abuse occurred at home in the bedroom.
Pursuant to La.R.S. 15:422(6), we take judicial cognizance that September 8, 1986, was a Monday. Under the instant facts and circumstances, we conclude that Edwards' testimony repeating the victim's disclosures falls within the original or early complaint of a rape victim exception to the hearsay rule. During the interview conducted on Monday, the child told Edwards that defendant had most recently committed the instant offenses against her on the previous weekend, one or two days before the interview. Dr. Cefalu's opinion that *1380 the child's vaginal, cervical irritation had existed for four to seven days was thus consistent with the child's statement that defendant had last abused her on the weekend before her first interview with Edwards. The record indicates that the disclosures to Edwards (a compassionate adult whom the child apparently felt she could trust) were the product of the shocking episode and not a fabrication. See State v. Simmons, 484 So.2d 894 (La.App. 1st Cir. 1986). Hence, the trial court's ruling allowing Edwards' testimony into evidence was correct. Moreover, even if improperly introduced, the testimony was merely corroborative and cumulative of other properly introduced testimony of the victim and is thus harmless error. See State v. Hookfin, 476 So.2d at 489.
However, in regard to Dupont's testimony, the record shows that the disclosures made to her do not fall within the ambit of the original or early complaint of a rape victim exception. These disclosures were made long after the September 8th interview with Edwards. Dupont testified that she was the victim's foster parent from the "first part of September" through October 31, that the disclosures were made to her while the child was riding home in her car following a psychological examination by Dr. Jansen in Metairie and that the foregoing occurred "just before" the child was taken out of her custody and placed into the custody of her aunt and uncle. Although we conclude that Dupont's testimony was improperly allowed into evidence, it was merely corroborative and cumulative of other properly introduced testimony of the victim and is accordingly harmless error.
ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends that the trial court erred by admitting into evidence (state exhibit three) the September 12, 1986, videotaped interview of the seven-year-old victim. He asserts that the interview was not conducted in accordance with La.R.S. 15:440.4(A)(5).
La.R.S. 15:440.4(A)(5) provides as follows:
A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:
* * * * * *
(5) That the taking of the child's statement was supervised by a physician, a board-certified social worker, a law enforcement officer, a licensed psychologist, or an authorized representative of the Department of Health and Human Resources.
* * * * * *
Gerson Saltz, an investigator with the Tangipahoa Parish Sheriff's Office, testified that he was present throughout the entire videotaped interview of the victim. Monica Edwards questioned the victim during the interview, and she testified that the only other persons present at the time of the interview were Mark Stafford and Mrs. Beauty Guildner. Edwards stated that Stafford was a detective with the Tangipahoa Parish Sheriff's Office and that Guildner was also employed by the sheriff's office.
Edwards testified that she was employed by the Louisiana Department of Health and Human Resources as a child protection investigator and that she had been so employed for about two years. She graduated from high school in 1982 and from Northeast Louisiana University in 1984, where she received a BA in social work. She was presently attending Louisiana State University working on a Master's degree in social work and had completed thirty-six hours of course credit toward that degree. She testified that she had attended the requisite training for employment as a child protection investigator. She had attended a child abuse and child neglect film training conducted by law enforcement personnel, a workshop regarding the use of anatomical dolls, the Fourth National Conference on the Sexual Abuse of Children and the Kids Are Worth It *1381 Conference. She stated that she had child protection investigation skills training, child investigation policy review training, life form training, supervision of videotaping and anatomically correct dolls training and baby day protocol training. Additionally, Edwards testified that, during the approximate two years of her employment with the state, she handled an average of ten to fifteen cases of child abuse each month. She stated that she was qualified by the State of Louisiana to conduct videotaped statements of child abuse victims. Thereupon, Edwards produced in court a certificate of her training which, according to her, listed her record of training from the state office to do videotaping. She also presented a document which she stated contained a record of additional training in supervision of videotaping and showed that she was certified for the next two years. These documents were offered into evidence by the state; but, following defense counsel's objection, the offerings were withdrawn by the prosecutor. Later, during cross-examination, Edwards testified that she had read the rules and regulations of the Department of Health and Human Resources regarding training requirements and certification of department personnel who supervise the taking of a child abuse victim's statement, but that she did not have a copy of the rules in her possession on the day of the trial.
We find that the state clearly complied with the provisions of La.R.S. 15:440.1 et seq., and in particular with the provisions of La.R.S. 15:440.4(A)(5) and (B)[1] through Edwards' testimony. Her testimony showed that, in her capacity as an authorized representative of the Department of Health and Human Resources, she was qualified to supervise the child's videotaped statement. Accordingly, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant contends that the trial court erred by refusing to allow defense counsel to introduce into evidence several records at the conclusion of counsel's cross-examination of Dr. Cefalu. Defendant states that the purpose of introducing the records was to enable the jury to decide whether or not Dr. Cefalu's testimony was inconsistent with those records.
During the prosecutor's direct examination of Dr. Cefalu, the prosecutor gave defense counsel a copy of the doctor's report of his examination of the seven-year-old victim.[2] Defendant does not now argue that defense counsel was denied use of the report in cross-examining Dr. Cefalu nor does the appellate record in any way indicate that there was any such denial. The appellate record reflects that, during defense counsel's cross-examination of Dr. Cefalu, the doctor produced in court what he referred to as his copy of the emergency room records and that he apparently permitted defense counsel to look at those records. In reading the appellate record it is apparent that, after defense counsel resumed his cross-examination of the doctor, he had access to the copy of the doctor's emergency room records. It is unclear which document was offered into evidence by defense counsel. However, when the offering was made at the conclusion of counsel's cross-examination, the state objected on the basis that the document was not the best evidence and the trial court sustained the objection.
The requirement that "best evidence" be produced, if it is within a party's control and by the nature of the case presumed to *1382 exist, does not preclude the introduction of corroborative evidence. La.R.S. 15:436; State v. Hollingsworth, 337 So.2d 461 (La. 1976); State v. Collins, 470 So.2d 553 (La. App. 1st Cir.1985). In Hollingsworth, the Supreme Court found no violation of the best evidence rule in admitting a coroner's report into evidence in addition to the coroner's testimony. The court stated:
Written reports are favored for their reliability as the best evidence. They are less likely to contain errors than a witness' testimony, especially when the time lapse between the recorded facts and the testimony is appreciable.
* * * * * *
These reports were also admissible in corroboration of the testimony of the witnesses.
337 So.2d at 466-467.
Herein, we conclude that the doctor's reports and his records were admissible as corroborative evidence and not excludable on the basis that they were not the best evidence. Hence, depending upon which of the documents was offered by defendant, that document was improperly excluded by the trial court. However, defendant does not allege nor do we find that he was prejudiced by the trial court's ruling. Injury, as well as error, must be alleged and shown to justify reversal of a conviction because of the exclusion of evidence. State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La. 1984). Accordingly, the error was harmless and does not merit reversal.

PATENT ERROR
This Court has discovered fatal error patent on the face of the record requiring that defendant's convictions and sentences for sexual battery and aggravated oral sexual battery be reversed.
Louisiana Constitution, Article I, Section 17, provides in pertinent part, as follows:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons ...
See also La.C.Cr.P. art. 782, which comports with the above constitutional requirements.
Herein, defendant was tried before a twelve-person jury. The punishment for aggravated rape is necessarily confinement at hard labor, and trial by the twelve-person jury was proper for that offense. See La.R.S. 14:42. However, the crimes of sexual battery (La.R.S. 14:43.1) and aggravated oral sexual battery (La.R.S. 14:43.4) are punishable with or without hard labor and, thus, require a six person jury. As both the applicable constitutional and statutory provisions require a six-person jury to try a case which is punishable with or without hard labor, trying defendant before a twelve-person jury was fatal error recognizable by this Court ex proprio motu. State v. Nedds, 364 So.2d 588 (La.1978). In a case where an accused is tried by a jury composed of either more or less than the correct number of jurors, the verdict is null. State v. Nedds, 364 So.2d at 589; State v. Pollard, 438 So.2d 1208 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 1125 (La.1984). Hence, in the instant case, the verdicts relating to the four counts in the indictment charging the crimes of sexual battery and aggravated oral sexual battery are null.
We do not, however, find it necessary to reverse and set aside defendant's conviction and sentence for the aggravated rape of the seven-year-old victim. We note that the record reflects that defendant never objected to his consolidated trials on the five counts charged in the indictment or to the mode of trial. We find that defendant was not prejudiced by the consolidated trials since the evidence established that the acts of sexual abuse committed against both victims constituted one continuous transaction of sexual abuse of the children. *1383 Hence, the criminal acts fell within the res gestae; and evidence of those acts would have been admissible if defendant had been charged and tried only as to the aggravated rape. Furthermore, the facts of the case were not so complex as to confuse the jury. See La.R.S. 15:447 and 448; Cf State v. Donahue, 355 So.2d 247 (La.1978); State v. Pollard, 438 So.2d at 1211.
Accordingly, we affirm the defendant's conviction and sentence for aggravated rape. The defendant's convictions and sentences for sexual batteries and aggravated oral sexual batteries are reversed and this portion of the case is remanded to the district court for a new trial.
CONVICTION AND SENTENCE FOR AGGRAVATED RAPE AFFIRMED. CONVICTIONS AND SENTENCES FOR SEXUAL BATTERY AND AGGRAVATED ORAL SEXUAL BATTERY ARE REVERSED AND REMANDED TO THE DISTRICT COURT FOR A NEW TRIAL.
NOTES
[1] LSA-R.S. 15:440.4(B) provides as follows:

The department shall develop and promulgate regulations on or before September 12, 1984, regarding training requirements and certification for department personnel designated in Paragraph (A)(5) who supervise the taking of the child's statement.
We note that, contrary to the implication made in defendant's brief that the state was required to produce a copy of the rules at the trial, there is no such legal requirement.
[2] The prosecutor also stated that he had previously provided defense counsel with an exact copy of the report. Defense counsel responded that he had been provided only with part of the report, pages two and three. Defense counsel further noted: "I was not provided with the first page. I don't thinkI am not objecting to it necessarily."