GRISBAUM, Judge.
The defendant was convicted by a six-person jury of cruelty to a juvenile (La.R.S. 14:93). We reverse and set aside.
The threshold question is whether the trial court committed reversible error in charging the jury that they could convict the defendant if they found him to be criminally negligent, when the bill of information only mentioned intentional acts.
FACTS
On September 22, 1986, the defendant, Blaine Panepinto, went to the home of Ms. Michelle Kusy to pick her up for their celebration of Ms. Kusy’s birthday. They left in the defendant’s car and proceeded to the Kangaroo Pouch Nursery to seek child care for Ms. Kusy’s eighteen-month-old son Austin. After leaving the child at the nursery, the defendant and Ms. Kusy went to several bars. The couple then went to the defendant’s former girlfriend’s house. Ms. Kusy became angry and decided to leave the defendant; she went to another bar to call a cab. Then she went home and sometime later went to the nursery to pick up her son. When she arrived at the nursery, Ms. Kusy was informed that her “boyfriend” had already picked up her son. She called the defendant to ask if he had her son. He answered that he had picked Austin up from the nursery and informed her that she should come to get the child immediately because “he looks like he is dying. ... he has got red marks all over him and he looks like he has some kind of rash or something.” Ms. Kusy went to the defendant’s house; upon arrival, she went into the bedroom where her son was sleeping and checked him but did not observe anything that concerned her.
At this point, testimony differs. The defendant testified that Ms. Kusy was acting very strangely all evening. He testified that he was concerned from the start about the quality of the Kangaroo Pouch Nursery and that it was this concern which caused him to go to pick up the child. The defendant further testified that, although he noticed a red mark on the child’s face when he picked him up at the nursery, he did not notice the full extent of the marks until he got the child home. The defendant agrees that he told Ms. Kusy about the child’s condition when she called and asked her to come and check the child, but Ms. Kusy refused, telling him that she was going to have a few drinks first. When she finally arrived she continued acting strangely and ran around the house giggling and laughing, according to the defendant. Later that night, Ms. Kusy took the child to East Jefferson Hospital where he was diagnosed as being the victim of child abuse. A human bite was discovered on the child’s leg, as well as several bruises on his head, neck, and legs. Expert testimony of the examining physician established that the bruises had been inflicted within a few hours of the examination and that an abused child often appears to have a rash before the bruises darken. The defendant was subsequently arrested.
ANALYSIS
The bill of information charged the defendant with violation of La.R.S. 14:93 “in that he did commit cruelty to Austin Kusy, a juvenile, by beating about the head and biting legs[.] ” La.R.S. 14:93 reads, in pertinent part, “Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child’s age shall not be a defense.”
The indictment only charged the defendant with the intentional acts of beating the victim about the head and biting his legs. No one could reasonably argue the indictment charged this defendant with criminally negligent mistreatment of the victim.
*507 Our jurisprudence is replete in its finding that the State is required by the Louisiana State Constitution to inform the defendant of the nature and cause of the accusation against him in sufficient particularity so that he is able to prepare for trial. La. Const. art. I, § 13; State v. Marcal, 388 So.2d 656 (La.1980), cert. denied, Marcal v. Louisiana, 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981). That provision has been interpreted to require that an indictment or information contain the essential facts of the offense charged. State v. Gainey, 376 So.2d 1240 (La.1979).
Additionally, La.C.Cr.P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
In order to sufficiently inform the defendant of the charge against him, the bill of information must contain all of the essential elements of the crime in sufficient particularity. State v. Meunier, 354 So.2d 535 (La.1978). At trial the State has the heavy burden of proving every element of the crime charged. State v. Hollingsworth, 337 So.2d 461 (La.1976).
The record shows that, in its opening statement, the State argued that the defendant was criminally negligent. Unfortunately, the defense counsel failed to object to this deviation from the allegations of intentional behavior contained in the bill of information. The record further discloses that, when the prosecution mentioned criminal negligence at the close of the trial, the defense counsel objected and made the argument that criminal negligence should not be included in the jury charges, since the bill of information charged the defendant with intentional acts only. However, the trial court noted that the defense counsel did not object to the State’s opening statement in this regard and that evidence was presented at trial as to possible criminal negligence. For this reason, the trial court ruled that criminal negligence should remain in the charge to the jury. The record also discloses that, immediately after the State made its closing remarks urging criminal negligence, the jury was charged accordingly.
Our jurisprudence is settled that the State cannot amend an indictment orally, in its opening statement or otherwise. See La.C.Cr.P. arts. 464, 384; State v. Buttner, 411 So.2d 35 (La.1982). Accordingly, the trial court and the prosecution participated in reversible error in that the jury charge relating to criminal negligence and the comments of the prosecution regarding criminal negligence in their opening and closing statement successfully trampled on the defendant’s constitutional and statutory rights, as referenced in this opinion.
For the reasons assigned, the conviction and sentence are reversed and set aside.
REVERSED AND SET ASIDE.