|SKUHN, J.,
concurring in part.
Defendant, Daniel J. Jones, was charged by bill of information with one count of fourth offense driving while intoxicated (hereinafter “DWI-fourth offense”), in violation of La. R.S. 14:9s.[1] The offense was alleged to have occurred on June 29, 2002. Defendant entered a plea of not guilty. After a trial by a jury, defendant was found guilty as charged and was sentenced to twenty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. In addition the trial court imposed a fine of $5,000.00 and ordered defendant’s vehicle forfeited. The trial court denied defendant’s motion to reconsider sentence.
Defendant appeals, urging the following assignments of error warrant reversal of his conviction and sentence:
*887 |41. There was insufficient evidence presented at trial from which a jury could have found defendant guilty as charged.
2. The trial court erred in refusing to sentence defendant under the 2001 Acts, No. 1163 amendments to La. R.S. 14:98.
Finding no merit in these assignments of error, I would affirm defendant’s conviction and sentence.
FACTS
At about 11:15 P.M. on June 29, 2002, Pearl River Police Department Deputy Corey Crow was dispatched to assist a motorist on State Highway 41. On her way to work, police dispatcher Barbara Cráwford had observed a' white male slumped over the steering wheel of a silver Kia that was pulled off on the shoulder of the highway, just barely off the road. No one else was in or around the car and there were no other vehicles in the vicinity. She thought the driver might be having a medical emergency. When she arrived at the station, only about one and one half miles away, she asked Deputy Crow and reserve Officer Edgar Legman to investigate. Officer Legman left immediately to investigate.
When Officer Legmam arrived on the scene, just moments later, defendant Daniel J. Jones was getting out of the driver’s side of the Kia and staggering toward a sports utility vehicle (SUV) parked nearby. At this point, the Kia was in a different location, about twenty-five feet off the roadway, stuck in mud. Defendant tried to get into the passenger side of the SUV, but Officer Legman advised him that he could not leave. The driver of the SUV then drove off, leaving defendant on the shoulder of the road. Defendant told Officer Legman that he was trying to get his vehicle out of a ditch and that his girlfriend had-been driving.
IrWhen Deputy Crow arrived to take over the investigation shortly thereafter, defendant was sitting in the driver’s seat of the Kia, with the driver’s side door open. Defendant appeared intoxicated and Deputy 'Crow read him his Miranda rights. When asked if he had been drinking, defendant admitted that he had a couple of beers earlier, had been at a friend’s house swimming, and was headed home. Defendant had a Kia uniform shirt on and indicated that he was purchasing the Kia. At no time did he suggest to Deputy Crow that anyone else had been driving the vehicle. Officer Crow understood from his exchange .with defendant that defendant had driven the car into the ditch on the side of the road.
Officer Crow called for assistance from the State police DWI patrol. State Trooper Greg Vogt was dispatched to assist. Trooper Vogt observed defendant staggering, with watery bloodshot eyes, slurred speech, and a strong odor of alcohol coming from his breath. After defendant failed a field sobriety test, he was placed under arrest and advised of his Miranda rights. • Trooper Vogt asked defendant how his vehicle ended up off the roadway. Defendant answered that he was driving from a friend’s house and just “ran off the road.” He also stated: “I know I drank too much. I guess I’m going to jail for thirty years now.” He made no mention of anyone else operating the Kia.
After defendant was transported to the Pearl River Police Station, Trooper Vogt administered a chemical test for intoxication. Defendant admitted that he had been drinking and had consumed about five beers at home. He also indicated that he had taken a muscle relaxapt. At this point, defendant changed his story and told Trooper Vogt that he had not been *888 driving the Kia. He stated that a girl named Cindy had been driving, but he denied knowing where Cindy had gone. He |fidid not describe “Cindy” as his girlfriend. When asked why he changed his story, defendant replied: “Well, I don’t like lying, but I will say anything to keep me in the clear.” The results of defendant’s Breath Intoxilyzer Test showed a blood alcohol level of .216, more than twice the legal limit. Afterward, on the way to jail, he apologized to Trooper Vogt for lying and saying that someone named “Cindy” had been operating the vehicle.
Shonni Oswald, a probation officer for the Twenty-Second Judicial District Court for the Parish of St. Tammany, testified that she personally supervised defendant in connection with two separate misdemeanor DWI offenses in cases Nos. 189990 and 202761. Adam Stocks, another probation officer, identified documents showing defendant’s release from incarceration on three previous DWI charges. The dates on the documents showed that not more than ten years elapsed between defendant’s first conviction and this charge, excluding periods of incarceration. Stocks also testified that defendant was released on supervised probation on the most recent offense, No. 224540, with parole supervision scheduled to extend until December 2006. Finally, James Folks of the St. Tammany Parish Crime Laboratory testified that defendant’s prints matched those of the defendant convicted in cases Nos. 224540 and 251957.[2]
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, defendant claims that the evidence adduced by the State was insufficient to support his conviction of driving while intoxicated, | ./fourth offense. Specifically, he argues that there was no evidence that he was operating a motor vehicle on the evening in question.
The standard of review for sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). However, when a case involves circumstantial evidence, and the trier of fact reasonably rejects the hypothesis presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
At all relevant times, Louisiana Revised Statute 14:98 A provided, in pertinent part:
*889 (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
|s(b) The operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood
[[Image here]]
In order to convict an accused of driving while intoxicated, the State need only prove that the defendant was operating a vehicle and that he was under the influence of alcohol. State v. Pitre, 532 So.2d 424, 428 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989).
In his brief to this court, defendant does not contest the fact that he was intoxicated. Instead, he argues that the State failed to prove that he was operating a vehicle while under the influence of alcohol. Defendant insists that there was a reasonable hypothesis that someone other than defendant was driving the Kia and left in the SUV, so that there was insufficient evidence to prove beyond a reasonable doubt that he ever operated the vehicle.
The evidence adduced at trial shows that defendant was initially observed alone in the Kia, slumped over the wheel when no other vehicles were around. At that point the Kia was just slightly off the road. The SUV was not at the scene at that time. When Officer Legman arrived, shortly thereafter, the Kia had been moved and defendant was getting out of the driver’s side of the vehicle and staggering toward the SUV. Although he told Officer Legman that his girlfriend had been driving, he also advised that he was trying to get his vehicle out of the ditch. He later admitted to Trooper Vogt that he had been drinking and driving and apologized for lying about it. In my view, the evidence was more than sufficient to exclude, beyond a reasonable doubt, any reasonable hypothesis of defendant’s innocence. Defendant did not testify at trial. His hypothesis that 19someone else had been operating the vehicle and departed in the SUV was refuted at trial by the location of the Kia when Officer Legman arrived, defendant’s position exiting from the driver’s side of the vehicle, and defendant’s own admissions to officers that he had been driving and trying to get the Kia out of the ditch. The evidence presented at trial, viewed in the light most favorable to the State, supports defendant’s conviction for driving while intoxicated, fourth offense. This assignment of error is without merit.
ASSIGNMENT OP ERROR NUMBER 2
Defendant claims the trial court erred and imposed an excessive sentence by refusing to sentence defendant under the new sentencing provisions contained in 2001 La. Acts, No. 1163, amending the provisions of La. R.S. 14:98, which amendments went into effect August 15, 2001.[3]
Defendant was convicted on January 28, 2003. In State v. Mayeux, 2001-3195 (La.6/21/02), 820 So.2d 526, the Louisiana Supreme Court held that the specific language of the recent amendments to La. R.S. 14:98, the intent of the legislature, and the social and public policy goals sought to be served, mandate that the sentencing provisions of the amendments to La. R.S. 14:98 dictate the penalties for DWI offenses where convictions are ob *890 tained after the effective date of the amendments. Thus, the date of conviction, rather than the date of the offense, now governs the applicable penalties for DWI offenses. Since defendant in this case was convicted in January 2003, he was entitled to be sentenced in accordance with the amendments to La. R.S. 14:98 in effect at the time of his [10conviction. And because the date of his conviction was January 28, 2003, the trial judge did correctly sentence him in accordance with the law in effect.
Louisiana Revised Statute 14:98 E(4)(b) provided at all pertinent times:
If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance or any sentence to be served for a prior conviction for any offense.
In this case, the trial judge reviewed a presentence investigation report, which he relied upon in deciding an appropriate sentence. That report, made part of the record in this case, shows that defendant did receive the benefit of parole in connection with a previous conviction as a fourth DWI offender.[4] In addition, at the trial on the merits the State presented the testimony of Adam Stocks, a supervisor with the Louisiana Department of Public Safety and Corrections, Division of Probation and Parole, Covington District, who authenticated State records documenting defendant’s previous convictions and parole releases. Moreover, James Folks, a fingerprint expert, identified defendant as the same convicted person referred to in the records produced by Adam Stocks. The trial judge made a specific finding that the defendant had received the benefit of probation, parole, or suspension of sentence in the past at the sentencing hearing for this offense. The trial judge did not abuse his discretion in making such a finding. The sentence imposed on defendant in this case was not excessive and is in compliance with applicable law. This assignment of error is without merit.
JjjTHE PROPRIETY OF THE TWELVE-PERSON JURY’S VERDICT
I expressly address the posture of the dissenting opinion, which maintains that the holding in State v. Smith, 367 So.2d 857 (La.1979) requires this court, on our own motion, find that the verdict rendered by a twelve-person jury constituted patent error.
Article I, § 17 of the Louisiana Constitution states in part:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict.... Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury.
And La.C.Cr.P. art. 782 A states in relevant part:
Cases in which the punishment may be confinement at hard labor shall be tried *891 by a jury composed of six jurors, all of whom must concur to render a verdict.
Review of the jurisprudence, including State v. Smith, 367 So.2d 857, shows the supreme court has never expressly held that a defendant convicted of an offense triable by a six-person jury is entitled to a reversal of his conviction when a twelve-person jury has rendered a unanimous verdict. The Smith court relies on the majority’s holding in State v. Nedds, 364 So.2d 588 (La.1978), which cites numerous cases, including State v. Bailey, 154 La. 536, 97 So. 851 (1923), wherein the case of State v. Beebe, 127 La. 493, 496, 53 So. 730, 731 (1910) is cited as authority for the annulment of the jury’s verdict and the sentence imposed. And it is the Beebe court that supplied an articulated rationale for the conclusion 11gthat the conviction of a defendant by a larger-size jury was required to be set aside. In Beebe, the defendant was tried before a twelve-person jury although Article 116 of the Louisiana Constitution of 1898 provided that the case “shall be tried by a jury of five, all of whom must concur to render a verdict.” In reversing the conviction, the stated rationale given by the court was that “[t]he tribunal before which the accused was tried was ... without jurisdiction in the premises, and, as to him and his case, [it] was as though it did not exist.” State v. Beebe, 127 La. at 496, 53 So. at 731. An underpinning warranting the reversal was “ ‘that the [Sjtate has an interest in the preservation of the lives and liberties of its citizens, and will not allow them to be taken away without due process of law.” ’ Beebe, 127 La. at 497, 53 So. at 731 (citing State v. Thompson, 104 La. 167, 28 So. 882 (1900)). The court articulated:
for the [Sjtate is as much interested that a person who may be subjected to punishment at hard labor shall not be deprived of his liberty without due process of law as that one who must be subjected to such punishment shall not be so dealt with, and certainly one cannot be said to have had the benefit of due process' of law if tried before a tribunal upon which the law has conferred no jurisdiction to try him, but has, discriminatingly, conferred such jurisdiction elsewhere.
Beebe, 127 La. at 497, 53 So. at 731.
Subsequent to Beebe, the supreme court has held the verdict of a twelve-person jury that convicted a defendant of an offense triable by six-persons was defective, see e.g., State v. Rabbas, 278 So.2d 45 (La.1973), or that the court lacked jurisdiction, see e.g., State v. Reeves, 128 La. 37, 54 So. 415 (1911), or both, see e.g., State v. Bailey, 154 La. 536, 97 So. 851 (1923).
■|iaWithout analyzing the breakdown of the respective verdicts of individual jurors, citing the language of earlier constitutions, the Conclusion that jury size is a “jurisdictional requirement” was made. But none of these cases actually holds that when a defendant has been convicted of an offense triable by a six-person, jury by the unanimous verdict of a twelve-person jury, the conviction must be declared null and set aside.
Likewise, I do not find that this court’s holdings in State v. King, 524 So.2d 1376 (La.App. 1st Cir.1988), and State v. Clark, 589 So.2d 549 (La.App. 1st Cir. 1991), writ denied, 592 So.2d 1333 (La.1992), require this court to raise as patent error the unanimous verdict, declare it null, and remand for a. new trial. The convictions under scrutiny in King and Clark predated La. Acts 1997, No. 1502, § 1, approved October 3, 1998, effective November 5, 1998, and involved offenses triable before a six-person jury that had been joined with offenses triable before a twelve-person jury. King, 524 So.2d at 1382; Clark, 589 So.2d at 553. Thus, the *892 total number of peremptory challenges available to each defendant was implicated by the improper joinder. See La.C.Cr.P. art. 799. Prejudice certainly existed, and defendants’ due process rights had clearly been infringed. This case in which defendant was charged with but one offense for which the punishment was imprisonment with or without hard labor for more than six months is distinguishable because the total peremptory challenges were not implicated as in King and Clark. And this defendant has not been prejudiced.
I also find this court’s holding in State v. Adams, 525 So.2d 1256 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988) distinguishable. The issue under scrutiny in Adams was the propriety of convictions stemming from the misjoinder |14of offenses. Thus, unlike the defendant in this case who was tried for but a single offense, in Adams, the defendant had been tried before a jury on two charges: one which entitled him to a jury and the other which was required to be heard by a judge. Clearly, that defendant suffered prejudice and an infringement of his due process rights.[5] Therefore, Adams is distinguishable from the facts of this case and I do not believe this court is compelled to declare on our own motion the conviction a nullity which must be set aside.
Defendant’s DWI-fourth offense conviction mandates, among other things, imprisonment with or without hard labor for not less than ten nor more than thirty years. See La. R.S. 14:98 E(l)(a). Thus, under La. Const. Art. I, § 17, this is a “case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months” and one that “shall be tried before a [ 1sjury of six persons, all of whom must concur to render a verdict.” Because all members of the twelve-person jury concurred, under the Louisiana Constitution, defendant was technically tried “before a jury of six per *893 sons, all of whom ... concur[ed] to render a verdict.”[6]
As pointed out by Justice Dennis in State v. Nedds, 364 So.2d 588 (La.1978), and expressly subscribed to by Justice Lemmon, see State v. Mosley, 425 So.2d 764, 766 n. 4 (La.1983), where a defendant has been tried by a twelve-person jury in a case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months, there simply is no prejudice. This lack of prejudice is especially true in a case, like this one, where the verdict was unanimous. Mathematically,- the -lesser number is included within the greater. Thus, where unanimity is required and had, that twelve-persons rendered a guilty verdict in no way defeats the mathematical principle that six-persons, as a subset of the larger quantity, have rendered a guilty verdict. This obviously is not the case when the twelve-person verdict is not unanimous since, sitting alone, one or more of the six jurors comprising the six-person jury may have precluded a unanimous verdict. And clearly, as a matter of mathematics, logic, and legal principle, a person entitled to a twelve-person jury is not afforded his full panoply of rights when tried by a jury of a smaller size.
Located in that section of Title XXVI of the Code of Criminal Procedure setting forth the general provisions of Chapter 3, “Trial by Jury,” nothing in La C.Cr.P.16 art. 782 A specifies particular consequences when an accused is tried before a jury composed of a number which is not in conformity with the requirements stated in the procedural statute. It is incumbent on the accused to object to any non-conformity to the procedure employed at the trial against him. Where, as here, the defendant did not object to the larger jury composition and because the twelve-juror verdict was unanimous thereby obviating any prejudice, any “error, defect, irregularity, or variance” simply did not affect any substantial rights of the accused so as to warrant a reversal. See La.C.Cr.P. art. 921.
That rendition of a verdict by a twelve-person jury in a case calling for empanelment of a five-person jury is a violation of the accused’s due process rights in 1910, which the Beebe court stated as the basis to nullify a conviction, simply has no present day application given the jurisprudential development of sophisticated procedures that ensure an accused considerable protections. While due process affords a criminal defendant the right to a fair trial before an impartial jury, see Duncan v. State of Louisiana, 391 U.S. 145, 150, 88 S.Ct. 1444, 1448, 20 L.Ed.2d 491 (1968), where the accused has been afforded more protection than he is constitutionally mandated to receive, there is no deprivation of his right to an impartial jury and, hence, no due process violation. An error is harmless if the verdict rendered was surely unattributable to the error. See La. C.Cr.P. art. 921; State v. Taylor, 93-2201, p. 11 (La.2/28/96), 669 So.2d 364, 371, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Any error created by defendant having been convicted by a twelve-person jury although the crime he was charged with having committed was an offense that was triable “before a jury of six persons, all of whom must concur to render a verdict” under La. Const. Art. |17I, § 17 was harmless. The verdict rendered — being unanimous — was surely un *894 attributable to the fact that 12 persons agreed that defendant was guilty since any and all subsets comprised of any 6 jurors did, in fact, concur in that verdict.
I do not believe that the citizens of Louisiana in ratifying the 1974 Constitution intended this result, which — without infringement of a defendant’s due process safeguards' — defies consistent application of mathematical principles and logic. Where defendant has not complained or objected to the size of the jury and there has been no due process infringement, concluding on our own motion, that the verdict is absolutely null and reversing the conviction of a unanimous twelve-person jury simply because the offense is triable by a six-person jury is not justified and inconsistent with the purpose of the criminal justice system.
Accordingly, I would affirm the conviction and sentence.

. Defendant was originally charged with DWI-third offense. The bill was first amended to charge defendant with DWI-fifth offense and amended again to charge DWI-fourth offense. The fourth offense charged in this case occurred on June 29, 2002. The predicate offenses alleged in the information, as amended from time to time, were a February 18, 1997 22nd Judicial District Court guilty plea to the offense of operating a motor vehicle while under the influence of alcoholic beverages (# 251957-predicate number one), a May 31, 1994 22nd Judicial District Court guilty plea to the offense of operating a motor vehicle while under the influence of alcoholic beverages (# 224540-predicate number two), a November 8, 1990 22nd Judicial District Court guilty plea to the offense of operating a motor vehicle while under the influence of alcoholic beverages (# 189990-predicate number three), and a February 11, 1992 22nd Judicial District Court guilty plea to the offense of operating a motor vehicle while under the influence of alcoholic beverages (# 202761-predicate number four). Defendant raises no objection on appeal to the amendments to the bill of information.

. 1993 La. Acts, No. 669, § 1 increased the cleansing period of La. R.S. 14:98 F(2) from five to ten years. Application of Act 669 to an offender who committed his last DWI after the amendment and more than five years after the commission of his previous DWI offense does not violate the Ex Post Facto Clauses of either the federal or state constitutions. State v. Rolen, 95-0347, pp. 1-2 (La.9/15/95), 662 So.2d 446, 447 (per curiam).

. Defendant makes no argument that his sentence is unconstitutionally excessive for any other reason.

. See La.C.Cr.P. art. 877. Defendant did not contemporaneously contest the accuracy of the information in the presentence investigation report.

. Louisiana Code of Criminal Procedure article 493, providing for joinder of offenses, was under scrutiny in Adams. According to Article 493, two or more offenses may be charged in the same indictment or information as separate counts, whether felonies or misdemeanors, if the offenses are based on the same act or transaction or if part of a common scheme or plan “provided that the offense joined must be triable by the same mode of trial.'' The words "same mode of trial” could refer to more than one logical method of classifying criminal cases. Four classifications of trial are suggested by La. Const. Art. I, § 17: judge, six-person jury, twelve-person jury for which ten must concur, and unanimous twelve-person jury). See State v. Strickland, 94-0025, p. 10 (La.11/1/96), 683 So.2d 218, 225. These classifications are based upon both the character of the trier of fact and the requirement for reaching the verdict. State v. McZeal, 352 So.2d 592, 601 (La.1977). By selecting different criteria, other classes of trials could be devised: if one focused on the presence or absence of a jury, there would be two modes of trial: non-jury and jury; if one focused on the number of triers of fact, there would be three modes of trial: judge, six-person jury, and twelve-person jury. Id. The Adams court analogized the case of a defendant who had been convicted by a jury when he was charged with an offense triable before a judge with the case of a defendant convicted by a twelve-person jury when the offense of which he was charged was one triable by a six-person jury and concluded, under the Nedds rationale, that the verdict was "constitutionally defective.” The analogy is not pure; the facts of Nedds merely exemplify one possible logical mode of trial. A trial before a jury (of any number) is clearly a different "mode of trial” than one before a judge, regardless of the criteria focused on in classifying the trials provided for by La. Const. Art. I, § 17. Thus, reliance on Nedds was not pivotal to the disposition in Adams. Undeniably, the mode of trial was different for the felony conviction (mandated to be tried by a jury) from the misdemeanor offense (requiring a trial before a judge) and, therefore, the mis-joinder resulted in a constitutionally-defective trial warranting reversal of the misdemeanor conviction which had been improperly submitted to the jury.

. Indeed, this defendant has been unanimously found guilty by two six-person juries. If his case were to be remanded for a new trial and he were once again found guilty by another six-person jury, he will have received more due process than a person charged with a capital offense.